**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WILLIE SHANKS,

    Petitioner,                       Civil No. 04-CV-40313-FL
                                          HONORABLE PAUL V. GADOLA
v.                                         UNITED STATES DISTRICT JUDGE

HUGH WOLFENBARGER,

    Respondent,

_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

    Willie Shanks, ("petitioner"), presently confined at the Muskegon Correctional Facility in Muskegon, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his convictions for first-degree home invasion, M.C.L.A. 750.110a(2); M.S.A. 28.305(a)(2), assault with intent to do great bodily harm less than murder, M.C.L.A. 750.84; M.S.A. 28.279; assault with intent to rob while armed, M.C.L.A. 750.89; M.S.A. 28.284, possession of a firearm in the commission of a felony [felony-firearm], M.C.L.A. 750.227b; M.S.A. 28.424(2); and being a second felony habitual offender, M.C.L.A. 769.10; M.S.A. 28.1082. For the reasons stated below, petitioner's application for writ of habeas corpus is denied.

**I.  Background**

    Petitioner was convicted of the above offenses following his plea of no contest in the Muskegon County Circuit Court.

Petitioner had been scheduled to go to trial on this case and another unrelated criminal case involving a resisting and obstructing police officer charge on January 8, 2002. Petitioner had retained an attorney, Ronald Pannucci, to represent him on the prosecution involving the home invasion, assault with intent to do great bodily harm, assault with intent to rob while armed, and felony-firearm charges.  Prior to trial on these charges, Mr. Pannucci informed the trial court that he had only been retained by petitioner to obtain a favorable plea agreement, but had not been retained to represent petitioner at trial. Pannuccci informed the trial court that he was not prepared for trial and moved for an adjournment of the trial and to withdraw as counsel based on these facts.  Petitioner informed the trial court that it was his understanding that Pannucci would be his attorney "if we go to trial or whatever" and indicated he knew nothing about Pannucci representing him solely to obtain a plea agreement.  In response to petitioner's remarks, Pannucci indicated that there was now a conflict between himself and petitioner, which also supported allowing counsel to withdraw.

The prosecutor informed the trial court that he was not ready to proceed to trial on this case because he believed that a plea bargain offer which had been made would be communicated to petitioner and if the plea was not accepted, Mr. Pannucci would move for an adjournment of trial.  The prosecutor indicated that two of his witnesses had to be flown in from Texas and given defense counsel's statements during plea negotiations, the prosecutor did not want to fly these witnesses to Michigan at government expense if the trial was going to be adjourned.

The trial court granted the motion to adjourn the trial, in light of the fact that neither side was prepared for trial. The trial court denied defense counsel's motion to withdraw, noting that the court rules did not allow Mr. Pannucci to make the "boutique kind of appearance" that defense counsel had described. The trial court indicated that petitioner's claim that Michigan's 180 day rule had been violated by him not being brought to trial within 180 days of his arrest had been resolved by the motion to adjourn. Petitioner's trial counsel, Mr. Pannucci, then attempted to withdraw as counsel based upon comments made at the hearing, but the trial court indicated that any motion to withdraw would have to be made in writing.

The trial court recessed for thirty minutes and reconvened thirty minutes later to handle petitioner's other criminal case involving the resisting and obstructing a police officer charge. Petitioner was represented by appointed counsel, Carl S. Krueger, in this second case, which was scheduled for a bench trial. Mr. Krueger informed the trial court that petitioner had rejected plea offers which had been made to him and that the prosecutor was ready for trial. Mr. Krueger also advised the trial court that petitioner had informed Krueger that he wanted his retained attorney, Mr. Pannucci, to represent him on this second prosecution as well, even though petitioner had not previously informed Krueger that Mr. Pannucci would be his attorney on this case. However, Krueger noted that Pannucci had represented petitioner at the preliminary examination in this matter in the district court. The trial court engaged in lengthy discussions with the prosecutor and Mr. Krueger about Pannucci's prior involvement in this second prosecution. The trial court's

secretary informed the trial court on the record that Mr. Pannucci had some previous involvement in district court in this case "either erroneously or out of kindness."

While these discussions were taking place, Mr. Pannucci walked back into the courtroom. The trial court informed petitioner that if he was dissatisfied with how Pannucci had treated him, he might have remedies with the Attorney Grievance Commission or the Michigan State Bar. Nonetheless, the trial court indicated that it was going to proceed to trial on "248", the resisting and obstructing police officer case. This case was recessed for twenty five minutes.

Following a recess, trial began on the resisting and obstructing case. Mr. Pannucci filed an appearance on behalf of petitioner in this matter. Petitioner was sworn in to provide testimony. The prosecutor then informed the trial court that the parties had worked out a plea agreement in both cases. Petitioner stipulated that Mr. Krueger would withdraw as counsel in the resisting and obstructing police officer case and Mr. Pannucci would represent him in this matter. On the record, Mr. Pannucci asked petitioner about their "little disagreement on some things in front of the Court." Pannucci then asked petitioner if he wanted Pannucci to represent him on both criminal cases. Petitioner stated affirmatively that he did. In response to a second question from Pannucci, petitioner indicated that he had no questions. Pannucci informed the trial court that petitioner had an opportunity to speak with his mother and other family members regarding his decision to plead. Petitioner acknowledged that Pannucci's statement was accurate.

The prosecutor then placed the terms of the plea agreement on the record.

Petitioner would plead no contest to charges of first-degree home invasion, assault with intent to do great bodily harm less than murder, assault with intent to rob while armed, felony-firearm, and being a second-felony habitual offender in the first case, in exchange for which the prosecutor agreed to dismiss the supplemental information charging petitioner with being a third felony habitual offender.  In exchange for his no contest plea to these charges, the trial court indicated that it would agree, pursuant to *People v. Cobbs*, 443 Mich. 276; 505 N.W. 2d 208 (1993), that the minimum sentence in this case would not exceed 180 months or fifteen years.  In exchange for petitioner's plea of guilty to the resisting and opposing a police officer charge, the prosecutor would dismiss a charge of driving on a suspended license.

      The trial court explained at length the nature of the charges that petitioner would be pleading guilty to, the maximum sentences, and with respect to the felony-firearm charge, the fact that this charge called for a mandatory two year prison sentence which would have to be served consecutively to any other sentences.  The trial court further explained that the sentence agreement that it had agreed to involved only the minimum sentence and not the maximum sentence.  In response to questions from petitioner, the trial court explained to petitioner that while it was theoretically possible for petitioner to be sentenced to probation on the charges other than the felony-firearm charge, the Michigan sentencing guidelines would probably call for a sentence higher than that and further explained that the trial court could depart below the sentencing guidelines only for substantial and compelling reasons.  The trial court asked Mr. Pannucci if he saw any substantial and

5

compelling reasons for a downward departure. Pannucci replied "[P]robably not." Pannucci informed the trial court that he had calculated the minimum range of the guidelines at 10 and a half years and indicated that he explained to petitioner and his family that absent substantial and compelling reasons, the court would be required to impose a sentence of ten and a half years at a minimum. The trial court agreed with Pannucci's statement and again explained to petitioner that absent substantial and compelling reasons, any minimum sentence in this case would have to fall within the sentencing guidelines range. The court further advised petitioner that the trial court would determine his sentence after studying a pre-sentence report that would be prepared in this case.

In response to questions from the court, petitioner several times denied that any promises had been made to him, other than the terms of the plea agreement which had been placed on the record. Petitioner denied that anyone had threatened him to get him to plead no contest and that this was his own choice. The trial court then advised petitioner of the rights that he would relinquish by pleading no contest. As part of this advice, the trial court informed petitioner that if the trial court accepted petitioner's plea, petitioner would be giving up any claim that the plea was a result of any promises or threats which had not been disclosed on the record. Petitioner pleaded guilty to resisting and obstructing a police officer. Petitioner then pleaded no contest to the other charges. The police report was used to establish a factual basis for these charges.

On February 7, 2002, petitioner filed a motion to withdraw his no contest plea through newly retained counsel. A hearing was conducted on the motion to withdraw on

February 14, 2002.  Petitioner's new counsel argued that petitioner had felt pressured into accepting his plea and now wanted to withdraw it.  Counsel argued that the prosecution would not be prejudiced and the interests of justice would support plea withdrawal.  The trial court denied the motion.

Petitioner was sentenced on February 22, 2002 to concurrent sentences of five to twenty five years for first-degree home invasion, five to fifteen years for assault with intent to do great bodily harm, and fifteen to thirty years for assault with intent to rob while armed.  Petitioner also received a mandatory consecutive two year sentence on the felony-firearm conviction.

Petitioner's conviction and sentence were affirmed on appeal. *People v. Shanks,* 246765 (Mich.Ct.App. May 9, 2003); *lv. den.* 469 Mich. 970; 671 N.W. 2d 882 (2003).  Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

> I.  Defendant was denied effective assistance of counsel when retained counsel was not prepared for trial nor willing to represent defendant at trial because of a fee dispute, provided material misinformation about guidelines scoring, and waived speedy trial rights against client's wishes.
>
> II.  The trial court erred in denying defendant's pre-sentence motion to withdraw the guilty plea because none of the reasons cited by the trial court trump the interests of justice test.
>
> III.  Defendant's guilty plea is not voluntary, because it is the product of attorney misconduct, unconstitutional violations and unfairness of trial court.
>
> IV.  Defendant was improperly and unconstitutionally denied a speedy trial and his conviction must be reversed and dismissed.
>
> V.  The trial court erroneously scored OV 1 Aggravated Use of Weapon and OV 7 Aggravated Physical Abuse.

## II.  Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

## III.  Discussion

**A.  Claim # 4.  The speedy trial claim.**

8

For purposes of judicial clarity, the Court will address petitioner's speedy trial claim first. In his fourth claim, petitioner claims that his rights to a speedy trial under the federal constitution was violated, because he was not brought to trial until six and a half months after being arrested on these charges. Petitioner further alleges that he was brought to trial in violation of Michigan's 180 day rule set forth in M.C.L.A. 780.131; M.S.A. 28.969(1) and M.C.R. 6.004(d).

An unconditional guilty plea constitutes a waiver of all pre-plea non-jurisdictional constitutional deprivations. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). A nolo contendere plea also constitutes a waiver of all non-jurisdictional defects. *United States v. Freed,* 688 F. 2d 24, 25 (6th Cir. 1982). Petitioner's no contest plea waived his claim that he was denied his constitutional right to a speedy trial and his related claim that he was brought to trial in violation of Michigan's 180 day rule. *See Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003). [1]

Petitioner is also not entitled to habeas relief, because he has failed to show that his right to a speedy trial was violated. The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. Amend. VI. To determine whether a speedy trial violation has occurred, the court must consider the following four factors: (1)

---

[1] While it is true that unpublished opinions carry no precedential weight, they often carry "persuasive weight." *United States v. Webber,* 208 F. 3d 545, 551, n. 3 (6th Cir. 2000). Moreover, as one court has commented: "[T]he fact that West Group is now digesting and publishing, in its 'Federal Appendix' series, opinions not selected by the Court of Appeals for formal publication, certainly puts a new twist on just what constitutes an 'unpublished' opinion." *See In Re Park,* 275 B.R. 253, 258, n. 9 (Bankr. E.D. Va. 2002).

9

the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). No single factor is determinative, rather the court must weigh them and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. *Id.* at 533.

Petitioner's speedy trial claim fails for several reasons. The length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker v. Wingo,* 407 U.S. at 530. Therefore, to trigger a speedy trial analysis, the accused must allege that the interval between the accusation and the trial has crossed the threshold dividing ordinary from presumptively prejudicial delay. *Doggett v. United States,* 505 U.S. 647, 651-52 (1992); *See also Burns v. Lafler,* 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004). Courts have generally found postaccusation delays that approach one year to be "presumptively prejudicial". *Doggett,* 505 U.S. at 652, n. 1; *United States v. Brown,* 90 F. Supp. 2d 841, 846 (E.D. Mich. 2000).

In the present case, petitioner was formally charged with a crime on June 27, 2001 and trial was set to begin on January 8, 2002, some six and a half months later. A six and a half month delay is not presumptively prejudicial. *See Norris v. Schotten,* 146 F. 3d 314, 328 (6th Cir. 1998)(eight month delay insufficient to presume prejudice); *United States v. Lugo,* 170 F. 3d 996, 1002 (10th Cir. 1999)(seven month delay is not presumptively prejudicial, rendering a *Barker* analysis unnecessary); *United States v. Arkus,* 675 F. 2d

245, 248 (9th Cir. 1982)(a six month delay between the charges and trial is not presumptively prejudicial); *Burns v. Lafler,* 328 F. Supp. 2d at 722 (delay of just under six months not presumptively prejudicial).  Petitioner has therefore failed to establish that his delay was presumptively prejudicial and it would therefore be unnecessary for this Court to inquire into the other *Barker* factors. *Burns,* 328 F. Supp. 2d at 722 (citing *United States v. Cope,* 312 F. 3d 757, 778 (6th Cir. 2002)).

Petitioner's claim also fails because there is no evidence on the record that any part of this delay was intentionally caused by the trial court or the prosecution. *Norris v. Scotten*, 146 F. 3d at 327-28.  There is nothing in the record to indicate a "willful attempt" by the prosecution to delay the trial, *Burns v. Lafler,* 328 F. Supp. 2d at 722 (quoting *Davis v. McLaughlin*, 122 F. Supp. 2d 437, 443 (S.D.N.Y. 2000)), nor is there any evidence that the prosecution intentionally delayed the trial to gain a tactical advantage over petitioner. *Id.*  Finally, petitioner is not entitled to habeas relief on his speedy trial claim, because he has not shown that his defense was prejudiced by this delay. *Burns v. Lafler,* 328 F. Supp. 2d at 722 (citing *Owsley v. Bowersox*, 48 F. Supp. 2d 1195, 1211 (W.D. Mo. 1999)).

Secondly, petitioner is not entitled to habeas relief on his claim that he was brought to trial in violation of Michigan's 180 day rule set forth in M.C.L.A. 780.131; M.S.A. 28.969(1) and M.C.R. 6.004(d) because it is essentially a state law claim. *See Burns v. Lafler,* 328 F. Supp. 2d at 722.  A violation of a state speedy trial law by state officials, by itself, does not present a cognizable federal claim that is reviewable in a habeas petition. *Burns,* 328 F. Supp. 2d at 722 (citing *Poe v. Caspari*, 39 F. 3d 204, 207 (8th Cir. 1994);

11

*Wells v. Petsock*, 941 F. 2d 253, 256 (3rd Cir. 1991)). Petitioner's allegation that the State of Michigan violated its own 180 day rule would therefore not entitle him to habeas relief. *Id.*

Moreover, Michigan's 180 day rule does not apply to petitioner because he was not incarcerated in a state penal institution awaiting trial and the 180 day rule, by its very terms, does not apply to criminal defendants like petitioner who are incarcerated in a county jail awaiting trial. *See People v. Patterson,* 170 Mich. App. 162, 166; 427 N.W. 2d 601 (1988); *See also People v. Merkerson*, 147 Mich.App. 207, 213; 382 N.W. 2d 750 (1985). Petitioner is not entitled to habeas relief on this claim.

**B. Claims # 1, 2, and 3. The ineffective assistance of counsel and involuntary plea claims.**

The Court will address petitioner's first, second, and third claims together because they are interrelated. Petitioner claims that his no contest plea was involuntary and was the product of the ineffective assistance of trial counsel. Petitioner claims that the trial court therefore erred in refusing to allow him to withdraw his no contest plea.

Initially, the Court observes that petitioner has no absolute right to withdraw his no contest pleas. *See Hoffman v. Jones,* 159 F. Supp.2d 648, 655 (E.D. Mich. 2001)(citing *United States ex rel. Scott v. Mancusi*, 429 F. 2d 104, 109 (2nd Cir. 1970); *People v. Bencheck*, 360 Mich. 430, 432; 104 N.W. 2d 191 (1960); *People v. Harris*, 224 Mich. App. 130, 131; 568 N.W. 2d 149 (1997)). Therefore, unless the pleas violated a clearly-established constitutional right, whether to allow the withdrawal of a criminal defendant's no contest pleas is discretionary with the state trial court. *Id.*

A guilty or no contest plea that is entered in state court must be voluntarily and intelligently made. *See Doyle v. Scutt,* 347 F. Supp. 2d 474, 482 (E.D. Mich. 2004)(citing *Boykin v. Alabama,* 395 U.S. 238, 242 (1969)). In order for a plea of guilty or no contest to be voluntarily and intelligently made, the defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Correctional Institution*, 927 F. 2d 256, 257 (6th Cir. 1991). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty. *King v. Dutton*, 17 F. 3d 151, 154 (6th Cir. 1994). When a petitioner brings a federal habeas petition challenging his plea of guilty (or no contest), the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F. 2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.* A federal court will uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty or no contest. *See Hoffman v. Jones,* 159 F. Supp. 2d at 655-56. Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his or her guilty plea, as evidenced by the plea colloquy, is valid. *See Myers v. Straub,* 159 F. Supp. 2d 621, 626 (E.D. Mich. 2001).

It is only when the consensual character of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Mabry v. Johnson*, 467 U.S. 504, 508-09

13

(1984). A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his or her own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (i.e. bribes). *Id.*

In the present case, petitioner was advised of the maximum penalties for the offenses that he was charged with and any mandatory minimum penalties. The trial court explained to petitioner at great length the applicability of the Michigan Sentencing Guidelines and how they would only apply to his minimum sentence. The trial court and the prosecutor placed the terms of the plea agreement on the record and petitioner acknowledged several times that this was the entire agreement. The trial court even explained that the sentence agreement that the court had entered into with petitioner pursuant to *People v. Cobbs,* applied only to the minimum sentence. Petitioner denied several times that any other promises or threats had been made to induce his plea of no contest. The transcript and the colloquy clearly establish that petitioner's plea of no contest was entered into knowingly and voluntarily.

Petitioner nonetheless claims that he was coerced into pleading no contest because he was deprived of the effective assistance of counsel. To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the

14

circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* Second, the defendant must show that such performance prejudiced his defense. *Id.*

In order to satisfy the prejudice requirement for an ineffective assistance of counsel claim in the context of a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty but would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill,* 474 U.S. at 59. The Sixth Circuit has interpreted *Hill* to require a federal habeas court to always analyze the substance of the habeas petitioner's underlying claim or defense to determine whether but for counsel's error, petitioner would likely have gone to trial instead of pleading guilty or no contest. *See Maples v. Stegall,* 340 F. 3d 433, 440 (6th Cir. 2003). The petitioner must therefore show a reasonable probability that but for counsel's errors, he would not have pleaded guilty or no contest, because there would have been a reasonable chance that he would have been acquitted had he insisted on going to trial. *Doyle v. Scutt,* 347 F. Supp. 2d at 484; *See also Garrison v. Elo,* 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001). A habeas petitioner's conclusory allegation that, but for an alleged

15

attorney act or omission he or she would not have pleaded guilty, is therefore insufficient to prove such a claim. *Garrison,* 156 F. Supp. 2d at 829.

In the present case, petitioner has failed to show a reasonable probability that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pleading no contest. *See Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002). In this case, petitioner does not indicate what defenses, if any, that he had to these charges. Because petitioner does not explain what viable defense that he had in this case, he has failed to show that counsel was ineffective in advising him to plead no contest. *See Cisse v. United States,* 330 F. Supp. 2d 336, 343 (S.D.N.Y. 2004). Moreover, as mentioned above, petitioner's speedy trial and 180 day rule violation claims are without merit. If a speedy trial motion likely would have been unsuccessful, trial counsel's failure to make the motion does not constitute ineffective assistance. *See Boyd v. Hawk*, 965 F. Supp. 443, 450 (S.D.N.Y. 1997). Because petitioner's speedy trial claim was without merit, he is unable to show that he was prejudiced by counsel's decision to advise him to plead no contest, rather than go to trial.

To the extent that petitioner alleges that his counsel coerced him into pleading no contest by threatening to withdraw as his counsel, this claim is defeated by the fact that petitioner stated on the record at his plea hearing that no threats had been made to get him to plead no contest and that he was pleading freely and voluntarily. Petitioner's bare claim that his counsel coerced him into pleading no contest is insufficient to overcome the presumption of verity which attaches to petitioner's statements during the plea colloquy,

16

in which he denied that any force or threats had been used to get him to enter his plea. *See e.g. Restucci v. Spencer,* 249 F. Supp. 2d 33, 45-46 (D. Mass. 2003); *See also Heiser v. Ryan,* 813 F. Supp. 388, 401-03 (W.D. Pa. 1993)(rejecting petitioner's claim that counsel coerced his guilty plea by threatening to withdraw from the case, where the petitioner indicated during the plea colloquoy that his plea was voluntary). Moreover, in light of the fact that the trial court judge adjourned the trial, petitioner has failed to make a credible showing that he was pressured into pleading no contest because his counsel was unprepared to proceed to trial that day. *Cf. United States v. Bliss,* 84 Fed. Appx. 820, 822 (9th Cir. 2003)(defendant who pleaded guilty to various federal charges was deprived of the effective assistance of counsel in connection with his plea, where, on the date that the trial was scheduled to commence, defense counsel was unprepared to defend him due to his failure to conduct a reasonable investigation, the trial court refused to grant a continuance, and the defendant only entered a guilty plea to avoid life imprisonment). Finally, petitioner indicated at the time of his change of plea hearing that he was satisfied with counsel and wanted him to remain on his case. This also defeats his ineffective assistance of counsel claim. *See United States v. Allen,* 981 F. Supp. 564, 575 (N.D. Iowa 1997)(any claim of ineffective assistance of counsel as a basis for withdrawing a defendant's guilty plea was refuted by a defendant's failure to assert any objections to defense counsel's performance at the change-of-plea hearing, despite the defendant's knowledge at that time of matters the defendant believed counsel had overlooked, improperly discounted, or overemphasized).

To the extent that petitioner claims that his plea was involuntary because his counsel misled him into believing that his minimum sentence would be ten and a half years, this claim is without merit. Absent extraordinary circumstances, or some other explanation as to why a defendant did not reveal other terms when specifically asked to do so by the trial court, a plea agreement consists of the terms revealed in open court, where the trial court scrupulously follows the required procedure for taking the defendant's plea. *Baker v. United States*, 781 F. 2d 85, 90 (6th Cir. 1986). A state court's proper plea colloquy will cure any misunderstandings that a petitioner may have had about the consequences of the plea. *Ramos v. Rogers*, 170 F. 3d 560, 565 (6th Cir. 1999). Therefore, a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute an "extraordinary circumstance" under *Baker* when the court conducts a proper, clear, and thorough plea colloquy. *Id.*

In the present case, the entire terms of the plea agreement were placed on the record. More than once, petitioner denied that any other promises had been made to get him to plead no contest other than the terms of the plea and sentence agreement which had been placed on the record. The trial court explained to petitioner that pursuant to the sentence agreement, the trial court agreed that it would sentence petitioner to a minimum sentence no greater than fifteen years. Petitioner would therefore not be entitled to the withdrawal of his plea based on his allegation that his attorney gave him misleading sentencing information where petitioner was given the correct sentencing information by

18

the sentencing judge at the time of the plea and petitioner expressly denied the existence of other representations or promises at the time of his plea. *Hastings v. Yukins,* 194 F. Supp. 2d 659, 670 (E.D. Mich. 2002) (citing to *United States v. Todaro*, 982 F. 2d 1025, 1029-30 (6th Cir. 1993)).  Petitioner is not entitled to relief on his first, second, or third claims.

### C. Claim # 5.  The sentencing guidelines claim.

Petitioner lastly claims that the trial court erroneously scored several of the offense variables under the Michigan Sentencing Guidelines.

In the present case, the state trial court's allegedly improper interpretation of the state's sentencing guidelines is not a cognizable claim for federal habeas review. *Whitfield v. Martin,* 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001).  Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence. *See Lovely v. Jackson,* 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004). Petitioner's claim that the offense variables of sentencing guidelines were incorrectly scored thus fails to state a claim upon which habeas relief can be granted. *See Cook v. Stegall,* 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

### IV. <u>ORDER</u>

Accordingly, the Court **DISMISSES WITH PREJUDICE** the petition for writ of habeas corpus pursuant to Rule 4 of the Rules Governing § 2254 cases.

**IT IS FURTHER ORDERED** that if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a MOTION for a COA within **THIRTY (30) DAYS**

of filing a Notice of Appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States,* 310 F. 3d 900, 903 (6th Cir. 2002)("*We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA.*")(emphasis added)). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **TWENTY (20) DAYS** of service of Petitioner's motion for a COA.

s/Paul V. Gadola
**HONORABLE PAUL V. GADOLA
UNITED STATES DISTRICT COURT**

DATED: September 14, 2005

---

Certificate of Service

I hereby certify that on  September 15, 2005  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:                                      Raina I. Korbakis                                       , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                Willie Shanks                                      .

s/Ruth A. Brissaud
Ruth A. Brissaud, Case Manager
(810) 341-7845